**No. 24-661**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

ARTUR ELIZAROV,

*Cross-claimant-Appellant*

~versus~

UNISON AGREEMENT CORP,

*Cross-defendant-Appellee*

On Appeal from the United States District Court
For the Central District of California
№ 5:21-cv-00616-JWH-SPx
Hon. John W. Holcomb, District Judge

---

**APPELLANT'S OPENING BRIEF**

---

Ilya Alekseyeff [CA 242462]
LOIA, Inc.
PO Box 56
Van Nuys, CA 91408
Telephone: 213.537.4595
Email: ilya@loia.legal

*Attorney for Appellant Artur Elizarov*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................... II

TABLE OF AUTHORITIES ........................................................... IV

INTRODUCTION ........................................................................... 1

JURISDICTIONAL STATEMENT .................................................. 5

ISSUES PRESENTED ..................................................................... 6

STATEMENT OF THE CASE ......................................................... 8

SUMMARY OF THE ARGUMENT ...............................................13

STANDARD OF REVIEW ............................................................ 20

ARGUMENT ................................................................................. 26

I.    The District Court violated rule 12(d) when the court considered as "incorporated by reference" five documents and testimony of two witnesses submitted with Union's motion for dismissal and subsequently dismissed the Crossclaim as factually false based on these additional documents, which Unison presented solely to contradict the well-pleaded allegations of fact in the Crossclaim that never mentioned those additional documents or witnesses ......................... 26

II.   The allegation that Unison, who offered Elizarov $183,000 toward the downpayment on a house, concealed three significant contract terms from Elizarov until the day of closing when Elizarov could no longer reject Unison's contract without breaching his purchase agreement with the house seller, stated a claim for rescission based on fraud by concealment .................................................................................. 34

    A.    Elizarov alleged fraud by concealment with sufficient specificity to satisfy Rule 9(b) consistent with the Circuit precedent ...................................................................... 36

B.     Elizarov sufficiently alleged that he actually and
reasonably relied on Unison's misleading and
incomplete disclosures of its lending program, which
omitted three significant terms of Unison's transaction
with Elizarov ................................................................................41

C.     As a party to the contract, Unison had the duty to
disclose to Elizarov all the material facts relating to the
transaction ................................................................................. 48

D.     Elizarov sufficiently alleged that Unison's fraudulent
conduct caused him financial harm .......................................... 49

III.    The allegation that Unison presented Elizarov with a contract
of adhesion, which Elizarov could not reject without
breaching an existing contract to purchase a house, and
which required Elizarov to sell the house after 30 years or
otherwise buy Unison out, to assume all renovations costs
incurred in the first three years, and to pay interest over
100% per year, stated a claim for rescission and restitution
under the Unfair Competition Law and Consumer Legal
Remedies Act ........................................................................................ 50

A.     Elizarov properly sought equitable relief under the
California Unfair Competition Law .......................................... 55

B.     Elizarov may also seek equitable relief under the
California Consumer Legal Remedies Act ................................57

C.     Elizarov has sufficiently alleged that Unison's contract
was both substantively and procedurally
unconscionable ......................................................................... 58

CONCLUSION ............................................................................................61

CERTIFICATE OF COMPLIANCE FOR BRIEFS ....................................... 64

# TABLE OF AUTHORITIES

## Cases

*Allan v. Snow Summit, Inc.*,

    51 Cal. App. 4th 1358 (Cal. Ct. App. 1996) .............................................. 54

*AMN Healthcare, Inc. v. AYA Healthcare Servs., Inc.*,

    28 Cal.App.5th 923 (Cal. Ct. App. 2018).................................................. 56

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009) .............................................................................. 28

*Beckwith v. Dahl*,

    205 Cal.App.4th 1039 (Cal. Ct. App. 2012) ....................................... 42, 49

*Benavidez v. County of San Diego*,

    993 F.3d 1134 (9th Cir. 2021) ................................................................. 25

*Boschma v. Home Loan Center, Inc.*,

    198 Cal.App.4th 230 (Cal. Ct. App. 2011.)................................... 36, 41, 44

*Branch v. Tunnell*,

    14 F.3d 449 (9th Cir. 1994)...................................................................... 23

*Bridge Aina Le'a, LLC v. Land Use Comm'n*,

    950 F.3d 610 (9th Cir. 2020).................................................................... 25

*Broam v. Bogan*,

    320 F.3d 1023 (9th Cir. 2003)........................................................... 22, 25

iv

*Carboni v. Arrospide*,

    2 Cal.App.4th 76 (Cal. Ct. App. 1991) .......................................60

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,

    20 Cal.4th 163 (Cal. 1999) .......................................... 57

*Chabner v. United of Omaha Life Ins. Co.*,

    225 F.3d 1042 (9th Cir. 2000)................................................. 57

*Charpentier v. Los Angeles Rams*,

    75 Cal.App.4th 301 (Cal. Ct. App. 1999) ........................41, 45, 46

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*,

    710 F.3d 946 (9th Cir. 2013)................................................21, 22

*Ciba-Geigy Corp. USA*,

    317 F.3d 1097 (9th Cir. 2003)................................................. 37

*Civille v. Bullis*,

    209 Cal.App.2d 134 (Cal. Ct. App. 1962)................................50

*Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.*,

    395 F.2d 388 (8th Cir. 1968) ................................................ 20

*Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*,

    819 F.3d 476 (D.C. Cir. 2016) ................................................ 22

*Concha v. London*,

    62 F.3d 1493 (9th Cir. 1995)................................................. 38

*Conley v. Gibson*,

    355 U.S. 41 (1957) ............................................................... 20

*Cook v. Brewer,*

    637 F.3d 1002 (9th Cir. 2011) .......................................... 21

*Coto Settlement v. Eisenberg*,

    593 F.3d 1031 (9th Cir. 2010) .................................. 24, 27, 34

*Deutsch v. Flannery*,

    823 F.2d 1361 (9th Cir. 1987) ........................................... 38

*Dollinger v. San Gabriel Lanes*,

    205 Cal.App.2d 705 (Cal. Ct. App. 1962) .......................... 59

*Ebeid ex rel. United States v. Lungwitz*,

    616 F.3d 993 (9th Cir. 2010) ............................................ 37

*Ebeid, supra*,

    616 F.3d at p. 998 ............................................................ 40

*Eminence Cap., LLC v. Aspeon, Inc.*,

    316 F.3d 1048 (9th Cir. 2003) .......................................... 25

*Falk v. Gen. Motors Corp.*,

    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ............................ 38

*Falk v. General Motors Corp.*,

    496 F.Supp.2d 1088 (N.D. Cal. 2007) .............................. 38

*Farr v. United States,*

    990 F.2d 451 (9th Cir. 1993).......................................................21

*Gilligan v. Jamco Dev. Corp.,*

    108 F.3d 246 (9th Cir. 1997)..................................................... 22

*Golden West v. Suntrust Bank,*

    538 F.3d 1233 (9th Cir. 2008)................................................. 26

*Gould Elecs. Inc. v. U.S.,*

    220 F.3d 169 (3d Cir. 2000).................................................... 22

*Great Pac. Sec. v. Barclays Cap., Inc.,*

    743 F. App'x 780 (9th Cir. 2018) ............................................ 37

*Harper v. Ultimo,*

    113 Cal. App. 4th 1402 (Cal. Ct. App. 2003)....................... 53, 54

*Hayduk v. Lanna,*

    775 F.2d 441 (1st Cir. 1985) .................................................. 37

*Hoffman v. 162 North Wolfe LLC,*

    228 Cal.App.4th 1178 (Cal. Ct. App. 2014) ......................... 41, 48

*Hulsey v. Elsinore Parachute Ctr.,*

    168 Cal. App. 3d 333 (Cal. Ct. App. 1985) ............................... 55

*Inlandboatmens Un. of Pacific v. Dutra Group,*

    279 F.3d 1075 (9th Cir. 2002) ........................................... 23, 24

*Jackson v. Gates,*

    975 F.2d 648 (9th Cir. 1992) ..................................................... 26

*Johnson v. Riverside Healthcare Sys., LP,*

    534 F.3d 1116 (9th Cir. 2008).............................................. 25,36

*Kehr Packages, Inc. v. Fidelcor, Inc.,*

    926 F.2d 1406 (3d Cir. 1991) ............................................. 22, 33

*Khoja v. Orexigen Therapeutics, Inc.,*

    899 F.3d 988 (9th Cir. 2018)............................................... 27, 33

*Klein v. Earth Elements, Inc.,*

    59 Cal.App.4th 965 (Cal. Ct. App. 1997) .................................. 56

*Knievel v. ESPN,*

    393 F.3d 1068 (9th Cir. 2005)................................................... 23

*Knox v. First Sec. Bank of Utah,*

    196 F.2d 112 (10th Cir. 1952) ............................................ 20, 47

*Lee v. City of L.A.,*

    250 F.3d 668 (9th Cir. 2001).................................................... 23

*Linden Partners v. Wilshire Linden Associates,*

    62 Cal.App.4th 508 (Cal. Ct. App. 1998)................................... 50

*MacDonald v. Ford Motor Co.,*

    37 F. Supp. 3d 1087 (N.D. Cal. 2014) ....................................... 38

*Marcure v. Lynn,*

    992 F.3d 625 (7th Cir. 2021) ................................................... 22

*Masters v. San Bernardino County Employees Retirement Assn.,*

    32 Cal.App.4th 30 (Cal. Ct. App. 1995) ............................. 35, 49

*Mirkin v. Wasserman,*

    5 Cal.4th 1082 (Cal. 1993) ................................................. 42, 46

*Mitchell v. Frank R. Howard Memorial Hosp,*

    853 F.2d 762 (9th Cir. 1988) ....................................................21

*Morris v. Redwood Empire Bancorp,*

    128 Cal.App.4th 1305 (Cal. Ct. App. 2005) ............................ 53

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda*

    *Pharm. Co.,* 520

    F. Supp. 3d 1258 (C.D. Cal. 2021) ........................................38

*Patterson v. ITT Consumer Fin. Corp.,*

    14 Cal.App.4th 1659 (Cal. Ct. App. 1993) .......................... 53, 58

*Roddenberry v. Roddenberry,*

    44 Cal.App.4th 634 (Cal. Ct. App. 1996) ................................ 48

*Sprewell v. Golden State Warriors,*

    266 F.3d 979 (9th Cir. 2001) ....................................................21

*Stout v. Edmonds,*

    180 Cal. App.3d 66 (Cal. Ct. App. 1986)....................................................45

*Total Benefits Planning v. Anthem Blue Cross*,

    552 F.3d 430 (6th Cir. 2008) ...................................................................22

*U.S. v. Ritchie,*

    342 F.3d 903 (9th Cir. 2003) ...................................................24, 27, 28

*United States v. City of Redwood,*

    640 F.2d 963 (9th Cir. 1981) ...................................................................25

*Walling v. Beverly Enterprises,*

    476 F.2d 393 (9th Cir.1973)......................................................................38

*Warner Constr. Corp. v. L.A.,*

    2 Cal.3d 285 (Cal. 1970) ..........................................................................48

*Washington v. Baenziger,*

    673 F.Supp. 1478 (N.D. Cal. 1987) .........................................................38

*Webb v. Trader Joe's Co.,*

    999 F.3d 1196 (9th Cir. 2021)....................................................................25

*Wool v. Tandem Computers, Inc.,*

    818 F.2d 1433 (9th Cir. 1987) ...................................................................38

## Statutes

Cal Civ. Code, § 1572 ................................................................ 35

Cal. Bus. & Prof. Code § 17200 .............................................. 55

Cal. Bus. & Prof. Code § 17201 .............................................. 55

Cal. Bus. & Prof. Code § 17203 .............................................. 55

Cal. Bus. & Prof. Code, § 10130 ............................................. 44

Cal. Bus. & Prof. Code, § 10131 ............................................. 44

Cal. Civ. Code § 1670.5 ............................................................51

Cal. Civ. Code, § 1689 ............................................................. 34

Cal. Civ. Code, § 1710 ............................................................. 35

Cal. Civ. Code, § 1770 ............................................................. 57

Cal. Civ. Code, § 1780 ............................................................. 58

## Other Authorities

CACI 1901 ................................................................................. 36

## Rules

Fed. R. Civ. P. 8 .................................................................. 36, 47

Fed. R. Civ. P. 9 .................................................................. 36, 47

Fed. R. Civ. P. 12 .........................................................21, 24, 27

## INTRODUCTION

In exchange for a percentage increase in the value of the house, Appellee Unison Contract Corp. offered Appellant Artur Elizarov $183,000 toward the downpayment to purchase a house in Palm Springs, California for $915,000.00.

When discussing its program with Elizarov, Unison deliberately concealed three significant facts from Elizarov: (1) after 30 years, Elizarov would have to pay Unison's money plus the increase in the value either by selling the house or by finding the funds from another source; (2) if Elizarov improved the property, the increase in the value would be adjusted to compensate Elizarov for these improvements _unless_ Elizarov improved and then sold the house within the first three years; and (3) Elizarov would have to submit to binding arbitration. Unison disclosed these terms for the first time on the day the transaction was scheduled to close when the notary presented Unison's contract—along with the other closing documents—for Elizarov's signature.

By then, Elizarov no longer had the option to reject Unison's contract. With all the purchase contingencies removed, which would have allowed Elizarov to cancel the purchase penalty-free, Elizarov had to deliver $183,000 to the escrow officer by the end of the day when the transaction

was scheduled to close or breach the purchase contract, forfeiting his $27,450 deposit. Since Elizarov had to rely on Unison to contribute $183,000 toward his downpayment, Elizarov had only three options: (1) sign Unison's contract, (2) find $183,000 elsewhere by the end of the day, or (3) breach his purchase contract. But because the latter two options were not viable, Unison left Elizarov with no option to reject the contract.

Nor did Elizarov realize that Unison's final contract, which Unison did not provide to Elizarov either before or after his purchase transaction closed, differed significantly from Unison's representations regarding its terms until Elizarov put the house for sale less than two years later and received Unison's demand for *$491,000*—a 168% return on Unison's $183,000 investment—during escrow.

At that point, Elizarov had only two logical choices: (1) find a legal means to cancel the sale and sue Unison before relisting the house again *or* (2) complete the sale and sue Unison afterward.

Since Elizarov decided to sell the house during the COVID-19 pandemic, when most people experienced financial hardship, the first option was not viable.

2

Therefore, Elizarov completed the sale and then sued Unison for rescission based on fraud by concealment and for restitution under the California Unfair Competition Law.

When it moved to dismiss the entire Crossclaim under Rule 12(b)(6), Unison presented two arguments: (1) the facts as alleged in the Crossclaim failed to state a claim and (2) the facts described in _five additional documents_ and testimony of _two witnesses_, which Unison presented to the District Court with its motion for dismissal, showed that Elizarov's allegations were factually false.

Although the Crossclaim mentioned none of Unison's additional documents, which Unison presented to the court solely to contradict the facts alleged in the Crossclaim, the District Court declined to convert Unison's motion for dismissal into a motion for summary judgment, deemed Unison's five additional documents incorporated by reference into the Crossclaim, and dismissed the Crossclaim as factually false.

After all the remaining claims were also dismissed by settlement, the District Court issued a final judgment of dismissal from which Elizarov timely appealed.

As Elizarov explains below, after reviewing the Crossclaim and Unison's motion for dismissal _de novo_, this court should exclude Unisno's

3

additional documents and review the motion for dismissal based solely on the facts as alleged in the Crossclaim, find that the Crossclaim stated claims for rescission based on fraud by concealment and restitution under the Unfair Competition Law and Consumer Legal Remedies Act, and remand the case to the District Court for discovery and trial.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over the crossclaim under 28 U.S.C. § 1367 and Fed. R. Civ. P. 13(f).

The District Court entered the order granting the motion to dismiss on December 12, 2022, ER—2 (Dkt. 246), and entered the final judgment on January 31, 2024, after all the remaining claims between all the parties in the case were resolved, ER—11 (Dkt. 373).

Artur Elizarov timely filed a Notice of Appeal in the District Court on February 1, 2024, ER—219 (Dkt. 375), which this court docketed on February 6, 2024, ER—233 (Dkt. 376).

This court has jurisdiction over this appeal from the final judgment of the District Court under 28 U.S.C. § 1291, Fed. R. App. P. 4(a)(1)(A), Fed. R. Civ. P. 54(b), and Fed. R. Civ. P. 58(b)(1)(C).

## ISSUES PRESENTED

1.      Whether the District Court violated rule 12(d) when the court considered as "incorporated by reference" five documents and testimony of two witnesses submitted with Union's motion for dismissal and subsequently dismissed the Crossclaim as factually false based on these additional documents, which Unison presented solely to contradict the well-pleaded allegations of fact in the Crossclaim that never mentioned those additional documents or witnesses.

2.      Whether the allegation that Unison, who offered Elizarov $183,000 toward the downpayment on a house, concealed three significant contract terms from Elizarov until the day of closing when Elizarov could no longer reject Unison's contract without breaching his purchase agreement with the house seller, stated a claim for rescission based on fraud by concealment.

**3.**      Whether the allegation that Unison presented Elizarov with a contract of adhesion, which Elizarov could not reject without breaching an existing contract to purchase a house, and which required Elizarov to sell the house after 30 years or otherwise buy Unison out, to assume all renovations costs incurred in the first three years, and to pay interest over

100% per year, stated a claim for rescission and restitution under the

Unfair Competition Law and Consumer Legal Remedies Act.

## STATEMENT OF THE CASE

### *Allegations in the complaint*

To provide Artur Elizarov with a portion of a downpayment needed to purchase a house in Palm Springs, California, in July 2019 Unison Agreement Corp. lent Artur Elizarov $183,000.00, which Elizarov agreed to pay the funds back on the terms and conditions outlined in two documents: the Homebuyer Option Agreement and Homebuyer Covenant Agreement, which Elizarov will refer to as "the contract." ER—165 [¶ 5], ER—173—211.

When Elizarov contacted Unison in early July 2019 for information about Unison's lending program, Unison explained its program as follows: Unison would lend Elizarov funds that Elizarov could use as part of a down payment to purchase the house in exchange for an option to acquire an ownership share in the purchased house; that Unison would have 30 years to exercise this option; that if Unison exercised the option before Elizarov sold the house, Unison would retain 40% of the equity gain in the house at the time of the sale, excluding any gains that resulted from any improvements that Elizarov might make to the house.  ER—165 [¶ 6].

After Unison approved Elizarov's application for the funding, Elizarov entered into a binding contract to purchase the house for $915,000.00 to be paid for with the loan from Unison of $183,000.00, plus a loan secured

by a loan from Goldwater Bank, NA, plus Elizarov's personal funds for the remainder. ER—165 [¶ 7].

When Elizarov entered into the purchase agreement, Elizarov paid $27,450.00 as an earnest money deposit, which Elizarov had to forfeit as liquidated damages if Elizarov failed to close the transaction on July 31, 2019, after releasing all the contractual contingencies. ER—165—166 [¶¶ 8-10].

After he released all the contingencies, Elizarov signed multiple closing documents, including the contract and Unison's deed of trust, which a notary public—whom Elizarov paid for but did not hire—brought to Elizarov on the contractual closing date: July 31, 2019. ER—166 [¶¶ 11-13]; ER—167 [¶ 19], ER—213—218. Elizarov did not know the contents of the contract because Unison had never sent it to him nor had a meaningful opportunity to review the contract when the notary presented it to Elizarov along with the other documents on July 31, 2019, because Elizarov had to ensure that all his signed documents were timely returned to the escrow and was under pressure to complete the signing ceremony quickly. ER—166 [¶¶ 14-15].

But even if Elizarov had carefully reviewed the contract on July 31, 2019, he could not have declined to sign it because he needed Unison's

9

$183,000 – which he could not have obtained from any other source on the day of closing – to close the transaction. If he had refused to sign the contract, the transaction would not have closed on July 31, 2019, exposing Elizarov to the risk of a lawsuit in the worst case and to the risk of losing his $27,500.00 in the best. ER—166-167 [¶¶ 16-17].

After Elizarov signed all the closing documents, the notary took them without leaving Elizarov a copy. ER—167 [¶ 18].

Unbeknown to Elizarov, the contract included terms that Unison had never mentioned to Elizarov, including Section 6.2 in the option and section 4.B in the covenant. ER—167 [¶ 21]. These surprising terms required Elizarov either to "buy out" Unison's interest in the house or to sell the house at the end of the 30-year term; required Elizarov to arbitrate his dispute with Unison; and required Elizarov to assume all the costs of improvements completed in the first three years post-purchase. ER—167 [¶ 21]. Elizarov discovered these additional terms when he sold the house to Scott Howlett in March 2020 when Unison demanded $491,000.00 from the sale price, which represented a 168% return on Unison's initial $183,000 investment at an approximate 100.7% annual rate. ER—168 [¶¶ 28-29].

10

Had Elizarov known about these terms, he would not have entered into the contract with Unison or even purchased the house using Unison's funds. ER—167 [¶ 22].

As these circumstances convinced Elizarov that Unison had deliberately concealed the full terms of its program from Elizarov and deliberately waited until the closing date to present the contract to Elizarov because Unison knew that Elizarov would have no choice but to sign the contract regardless of its terms, Artur Elizarov sued to rescind the contract as a remedy for fraud by concealment and to recover $308,000 restitution as a remedy for presenting Elizarov with unconscionable contract. ER—168 [¶¶ 25-26], AR-168-169 [¶¶ 30-36], AR-170.

### *Motion for dismissal and the court's ruling*

Unison timely moved to dismiss both causes of action. ER—76. In its motion, Unison claimed that the claim for fraud by concealment, as alleged in the first cause of action, lacked the necessary specificity required for fraud claims in general and that the allegations in the complaint were factually false, as described in the testimony of Unison's two witnesses and the contents of five additional documents. ER—76. Unison also claimed that the claim for rescission and restitution, as alleged in the second cause of action, did not apply because "no procedural or substantive

unconscionability exist[ed]" and because "Unison did not create the circumstances that led Mr. Elizarov to sign the agreement he ... [sought] to rescind." ER—76.

Elizarov timely opposed the motion, ER—32—74, to which Unison timely replied, ER—15—31.

After the court considered the amended Crossclaim, the motion (including attachment), the opposition (including attachment), and the reply, the court found that the motion was "appropriate for resolution without a hearing" and granted the motion, ER—3. Although the court acknowledged both arguments for relief as Unison stated in its motion—"(1) 'neither claim is supported by the required *factual* allegations'; and (2) both claims 'are factually false—even if viewed entirely based on facts that are within the [Amended Crossclaim], incorporated by reference, or subject to judicial notice"—the court relied solely on the second argument without considering the first. ER—7.

After all the remaining claims in the case were resolved, the court issued the Judgment, ER—11-14, from which Elizarov timely appealed, ER—219—232.

## SUMMARY OF THE ARGUMENT

Elizarov alleged two causes of action against Unison under California State law: a claim for rescission based on fraud by concealment and a claim for restitution under the Unfair Competition Law. Unison moved to dismiss both claims for two reasons: (1) the allegations failed to state a claim and (2) the allegations—when considered along with the testimony of two witnesses and five additional documents—were factually false. The District Court found the second reason—factual falsity—persuasive and ordered the entire Crossclaim dismissed without considering the first.

I.     The District Court violated Rule 12(d) when the court considered Unison's additional documents.

Motions for dismissal must be decided solely on the pleadings. If the defendant submits additional matters outside the pleadings, the court must either exclude the evidence or treat the motion as one for summary judgment unless the additional matter was incorporated by reference into the pleading. The additional matter is incorporated by reference if the pleading extensively referred to the matter or the matter formed the basis of the claim. However, the matter not mentioned in the pleading that the defendant submits solely as a defense to dispute or contradict the well-

pleaded facts, as well as a matter whose relevance is subject to dispute, may not be considered on the motion for dismissal.

Along with its motion for dismissal, Unison submitted five documents and the testimony of two witnesses solely to contradict the facts as alleged in the Crossclaim with its own version of the facts. Elizarov did not refer to or even mention any of these additional documents; rather, he disputed their authenticity in response.

Accordingly, Rule 12(d) required the District Court to exclude this evidence or, alternatively, treat the motion as one for summary judgment and allow Elizarov the opportunity to conduct discovery. Instead, the District Court accepted Unison's documents as "incorporated by reference" and subsequently dismissed the Crossclaim as factually false based solely on those documents.

Therefore, this court should correct the District Court's error and exclude Unison's additional evidence when reviewing Unison's challenge to the Crossclaim *de novo*.

II.    Elizarov sufficiently stated a claim for rescission based on fraud by concealment.

A claim for fraud by concealment requires the plaintiff to allege with particularity that—

(1)    the defendant concealed or suppressed a material fact from the plaintiff;

(2)    the defendant had a duty to disclose the fact to the plaintiff;

(3)    the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff;

(4)    the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact;

(5)    as a result of the concealment or suppression of the fact, the plaintiff sustained damages.

Although fraud must be alleged with particularity, plaintiffs alleging fraud-by-omissions face a slightly more relaxed burden due to the inherent inability to specify the time, place, and other specifics of an omission as precisely as would a plaintiff in a false-representation claim.

The Crossclaim alleged that Unison, who offered Elizarov $183,000 toward the downpayment on a house and had the duty to disclose all the terms of the transaction to Elizarov, deliberately concealed three important facts—the forced-sale provision, the limitation on the costs of improvements in the first three years, and the arbitration clause—until the day of the closing when Elizarov, who had already removed all the buyer's contingencies of the sale and lost the right to cancel the purchase penalty-

15

free, could no longer reject Unison's contract. Elizarov also alleged that had Unison disclosed these facts to him earlier in the transaction, he would not have agreed to accept Unison's money and may have canceled the purchase entirely. Elizarov finally alleged that Unison deliberately failed to disclose all the terms prior to the date of closing to force Elizarov into the contract.

Because Elizarov sufficiently alleged that—

(1)    Unison deliberately concealed facts from Elizarov,

(2)    as a party to the contract, Unison had the duty to disclose all the facts to Elizarov early in the transaction when Elizarov could still cancel the purchase,

(3)    Unison deliberately waited until the closing date to disclose all the terms because Unison wanted to force Elizarov into the contract,

(4)    Elizarov would not have agreed to accept Unison's money had he known all the terms, and

(5)    Elizarov lost $308,000 to Unison in the transaction,

—Elizarov has sufficiently alleged fraud by concealment and may seek rescission as a remedy.

III.    Elizarov sufficiently stated a claim for rescission and restitution under the Unfair Competition Law and Consumer Legal Remedies Act.

16

The Unfair Competition Law allows a consumer to seek rescission and restitution from a corporation that has engaged in any unlawful act, which includes presenting an unconscionable contract. Consumer Legal Remedies Act separately allows consumers to seek rescission and restitution when a corporation presents an unconscionable contract.

An unconscionable contract requires both procedural and substantive unconscionability, which the court evaluates on a sliding scale: more procedurally unconscionable contracts require less substantive unconscionability, and vice versa.

Procedural unconscionability addresses a lack of negotiation or meaningful choice and unequal bargaining power and often involves contracts of adhesion. Substantive unconscionability addresses the unfair reallocation of risks and surprises.

Unison's contract was procedurally unconscionable to a shocking degree. Unlike a typical contract of adhesion where the contract is presented to the consumer on a take-it-or-leave-it basis, Unison never even gave Elizarov a meaningful opportunity to reject the contract. When Unison presented the full contract on the day of closing, Elizarov could no longer reject Unison's contract without also rejecting Unison's $183,000, which Elizarov needed to close the transaction. If Elizarov objected to Unison's

terms, he would no longer have the funds to close the transaction and would a lawsuit for the breach of the purchase agreement, including the forfeiture of his $27,450 deposit.

Unison's contract was also substantively unconscionable. First, Unison's was not a typical option contract because Unison never intended to pay Elizarov for the house. Unison instead expected Elizarov to pay Unison the $183,000 investment plus the increase in the value of the home either by selling the house or by buying Unison's interest out. Second, the agreement shifted the entire costs of improvements during the first three years to Elizarov who could not exclude the costs from the value used to calculate each party's value share. And three, this arrangement carried extreme interest rates exceeding 100%. Finally, Unison's decision to conceal *these three terms* from Elizarov until the day of closing suggests that Unison knew that these terms were unconscionable and deliberately concealed them from consumers like Elizarov until the date of closing when Unison could force consumers to accept these terms or risk a claim for the breach of a purchase contract by the seller.

Accordingly, after reviewing Elizarov's Crossclaim and Unison's motion for dismissal, the court should conclude that the Crossclaim

sufficiently stated a claim for relief and remand the case to the District Court for Discovery and trial.

## STANDARD OF REVIEW

### *Purpose of the complaint*

"A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "The purpose of the rule is to eliminate prolixity in pleading and to achieve brevity, simplicity, and clarity." *Knox v. First Sec. Bank of Utah*, 196 F.2d 112, 117 (10th Cir. 1952). This rule "do[es] not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rule[] require[s] is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), abrogated on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Accord, *Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.*, 395 F.2d 388, 390 (8th Cir. 1968) ("The clear purpose of the rule is to give notice to the other party and not to formulate issues or fully summarize the facts involved").

### *The motion for dismissal*

If the defendant believes that the pleading did not give it sufficient notice of the claim under Rule 8(a)(2), the defendant may, by motion, raise

the "failure to state a claim upon which relief can be granted" as a defense.

Fed. R. Civ. P. 12(b)(6).

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Cook v. Brewer,* 637 F.3d 1002, 1009 (9th Cir. 2011). "When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.,* 710 F.3d 946, 956 (9th Cir. 2013). See also *Farr v. United States,* 990 F.2d 451, 454 (9th Cir. 1993); *Mitchell v. Frank R. Howard Memorial Hosp,* 853 F.2d 762, 766 (9th Cir. 1988).

As this court explained,

> "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" [Citation.] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [Citation.]

*Cook, supra,* 637 F.3d at p. 1004.

"A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of the claim that would entitle the plaintiff to relief." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) (italics added). "Dismissal is proper [only] when the complaint does not make out a cognizable legal theory or does not

allege sufficient facts to support a cognizable legal theory." *Chubb Custom Ins, supra,* 710 F.3d at p. 956.

In this Circuit, "Rule 12(b)(6) motions are viewed with disfavor." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003), citing *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997).

"[U]nder Rule 12(b)(6) the defendant has the burden of showing no claim has been stated." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); accord, *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000) ("The defendant bears the burden of showing no claim has been stated"). See also *Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016) ("Federal Rule 12(b)(6) places this burden on the moving party"); *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) ("every circuit court to address this issue—this Court included—has interpreted Rule 12(b)(6) as requiring the movant to show entitlement to dismissal"); *Total Benefits Planning v. Anthem Blue Cross*, 552 F.3d 430, 434 (6th Cir. 2008) ("The moving party has the burden of proving that no claim exists").

### *"Incorporation by reference" doctrine*

In general, when ruling on a motion for dismissal under Rule 12(b)(6), the court "may not consider evidence outside the pleadings in

connection with a motion to dismiss," *Inlandboatmens Un. of Pacific v. Dutra Group*, 279 F.3d 1075, 1083 (9th Cir. 2002), overruled in part on other grounds in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014), but "must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint," *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

This general rule is subject to two exceptions.

> First, a court may consider "material which is properly submitted as part of the complaint" on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. [Citation.] If the documents are not physically attached to the complaint, they may be considered if the documents' "authenticity . . . is not contested" and "the plaintiff's complaint *necessarily relies*" on them. [Citation.] Second, under Fed.R.Evid. 201, a court may take judicial notice of "matters of public record." [Citation.]

*Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) (italics added). The first exception—commonly called "incorporation by reference" doctrine—allows the court "to take into account documents 'whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel, supra,* 393 F.3d at p. 1076. Accord*, Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994), overruled on other grounds in *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

23

Accordingly, the defendant may invoke this doctrine and present additional documents only "where [1] the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, [2] the document's authenticity is not in question and [3] there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). If the court considers the additional evidence that does not satisfy these requirements, "the motion [for dismissal] is converted into a motion for summary judgment, and the non-moving party must be allowed to conduct discovery in order to oppose that motion." *Inlandboatmens, supra*, 279 F.3d at p. 1083. See also Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.")

Finally, "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" are the only types of additional extra-pleading materials that the court may, in an appropriate case, consider when ruling on a motion for dismissal. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). No court has

ever allowed a defendant to rely on _declarations_ when moving for dismissal under Rule 12(b)(6).

### _Review by this court_

This court reviews "de novo the dismissal of a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)," _Bridge Aina Le'a, LLC v. Land Use Comm'n_, 950 F.3d 610, 624 (9th Cir. 2020), which the court may affirm "based on any ground supported by the record," _Johnson v. Riverside Healthcare Sys., LP_, 534 F.3d 1116, 1121 (9th Cir. 2008).

The court reviews "for abuse of discretion a district court's dismissal with prejudice and without leave to amend," _Benavidez v. County of San Diego_, 993 F.3d 1134, 1141-42 (9th Cir. 2021), which "is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment," _Webb v. Trader Joe's Co._, 999 F.3d 1196, 1204 (9th Cir. 2021), quoting _Eminence Cap., LLC v. Aspeon, Inc._, 316 F.3d 1048, 1052 (9th Cir. 2003) (_per curiam_). Accordingly, "[d]ismissal without leave to amend is proper only in 'extraordinary' cases." _Broam, supra_, 320 F.3d at p. 1028, citing _United States v. City of Redwood_, 640 F.2d 963, 966 (9th Cir. 1981).

In reviewing questions of state law, "[t]he district court's interpretation . . . is reviewed de novo." *Jackson v. Gates*, 975 F.2d 648, 654-55 (9th Cir. 1992).

"When interpreting state law, [this court] must follow the decisions of the state's highest court, but when the state supreme court has not spoken on an issue, this court is 'not precluded from affording relief and must determine what result the [state supreme] court would reach based on state appellate court opinions, statutes and treatises.'" *Golden West v. Suntrust Bank*, 538 F.3d 1233, 1237 (9th Cir. 2008).

## ARGUMENT

**I.** **THE DISTRICT COURT VIOLATED RULE 12(D) WHEN THE COURT CONSIDERED AS "INCORPORATED BY REFERENCE" FIVE DOCUMENTS AND TESTIMONY OF TWO WITNESSES SUBMITTED WITH UNION'S MOTION FOR DISMISSAL AND SUBSEQUENTLY DISMISSED THE CROSSCLAIM AS FACTUALLY FALSE BASED ON THESE ADDITIONAL DOCUMENTS, WHICH UNISON PRESENTED SOLELY TO CONTRADICT THE WELL-PLEADED ALLEGATIONS OF FACT IN THE CROSSCLAIM THAT NEVER MENTIONED THOSE ADDITIONAL DOCUMENTS OR WITNESSES**

If a defendant moving to dismiss under Rule 12(b)(6) presents to the District Court "matters outside the pleadings," the District Court must either exclude the additional matters or treat the motion "as one for summary judgment under Rule 56," in which case the District Court must

also give the plaintiff "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). As an exception to this rule, the court may consider additional documents without converting the motion for dismissal into a motion for summary judgment "where [1] the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, [2] the document's authenticity is not in question and [3] there are no disputed issues as to the document's relevance." Coto Settlement, supra, 593 F.3d at p. 1038. However, "the mere mention of the existence of a document is insufficient to incorporate the contents of a document." Id., citing U.S. v. Ritchie, supra, 342 F.3d at p. 908-909. Rather, the document must be "integral" to the allegations in the complaint. Id.

This court clarified "when and how the district court should consider materials extraneous to the pleadings at the motion to dismiss stage via judicial notice and the incorporation-by-reference doctrine" when the court decided Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 994 (9th Cir. 2018).

In Khoja, after the SEC sued the defendant for securities fraud, the defendant filed a motion for dismissal under rule 12(b)(6) and concurrently asked that the district court treat 22 documents attached to the motion as

incorporated into the complaint. *Id.* at p. 997. The district court accepted all but one of the 22 documents and dismissed the complaint with prejudice. *Id*.

This court began its analysis by observing that "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery," *Id. at p 998*, and that permitting defendants "to present their own version of the facts at the pleading stage—and district courts [to] accept those facts as uncontroverted and true— [would make it] near impossible for even the most aggrieved plaintiff to demonstrate a sufficient 'plausible' claim for relief," *Id.* at p. 999, citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The court next explained this doctrine, which "treats certain documents as though they are part of the complaint itself," was judicially created to "prevent plaintiffs from selecting only portions of documents that support their claim, while omitting portions of those very documents that weaken—or doom—their claim." *Id.* at p. 1002.

Accordingly, this court cautioned that the doctrine should apply only when " 'the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.' " *Id*., citing *U.S. v. Ritchie, supra,* 342 F.3d at p. 907.

While this court acknowledged that "whether a document can ever 'form[ ] the basis of the plaintiff's claim' if the complaint does not mention the document at all" was a "difficult" one, the court decided that "the document [that] merely created a defense to the well-pled allegations in the complaint... [does] not *necessarily form the basis of the complaint*" to justify its admission at the pleading stage. *Id.* (internal citations omitted, italics added). "Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Id.*

The court described the problems with such misuse of the doctrine as follows:

> Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts. Without that opportunity to respond, the defendant's newly-expanded version of the complaint—accepted as true at the pleading stage—can easily topple otherwise cognizable claims. Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, *the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim.*

*Id.* at p. 1003 (italics added). Accordingly, "it is improper to assume the truth of an incorporated document if such assumptions only serve *to dispute facts* stated in a well-leaded complaint." *Id.* (italics added).

In this case, the District Court admitted, considered, and assumed as true the facts stated in *five additional documents*, which Unison submitted to the District Court with its motion for dismissal: (1) the application to Unison for funding, ER—124—126 ("Exhibit A"); (2) the contract to purchase the house, ER—128—137 ("Exhibit B"); the extension addendum, ER—139 ("Exhibit C"); Unison's conditional approval package, ER—141—150 ("Exhibit D"); and Important Information Notice, ER—152—156 ("Exhibit E").

To decide whether the District Court properly considered these documents—and, therefore, whether this court may also consider them in resolving this appeal—this court must consider whether Elizarov extensively referred to these documents or relied on them to form the basis of his claims against Unison, in which case the documents were properly incorporated by reference into the Crossclaim; or whether Unison introduced these documents solely to dispute Elizarov's allegation and to establish a defense, in which case the documents must be excluded in deciding the motion for dismissal.

In its motion, Unison explained the _purpose_ for providing these documents to the District Court as follows:

Unison offered the homebuyer application, ER—124—126 ("Exhibit A"), and the purchase agreement, ER—128—137 ("Exhibit B"), to show that "_contrary to [the allegations in the Crossclaim]_, Mr. Elizarov entered into the Purchase Agreement and put money down [_see_ FACC at ¶ 9] **before** working with Unison, and thus he did not rely on Unison at all in making the decisions to enter into the Purchase Agreement or in putting his $27,450 at risk." ER—94:17-20 (original formatting).

Unison offered the conditional approval, ER—141—150 ("Exhibit D") to show that "_contrary to [the allegations in the Crossclaim]_, long before [Elizarov] executed the Unison Agreement on July 31, 2019, Unison expressly (1) provided the financial terms of the Agreement to Mr. Elizarov, (2) invited him to get copies of the documents he now claims Unison "concealed" from him, (3) recommended that Mr. Elizarov review those documents with his legal and financial advisors, (4) recommended that he explore other financial arrangements to fund his purchase, and (5) encouraged him to understand the agreement and ask his Unison representative any questions he might have. Mr. Elizarov then signed the Conditional Approval Package confirming that all this information had

been provided to him two weeks ***before*** execution of the documents he now seeks to rescind. His claim that he was somehow unaware of these provisions or caught off-guard due to Unison's actions are, therefore, both untruthful and completely implausible." ER—96:16-28 (original formatting).

Unison finally offered the Important Information Notice, ER—152—156 ("Exhibit E"), to show that "_contrary to [the allegations in the Crossclaim]_, Unison advised Mr. Elizarov two weeks before he signed the Homebuyer Agreement that (1) he should be reviewing the Homebuyer Agreements documents with his legal and financial counsel, (2) he should not be using Unison's product for short-term financing, (3) he was ***not*** taking out a loan, but was instead giving Unison an option to claim 70% of the equity interest in the future value of the home, and even provided Mr. Elizarov with exemplar calculations of same, (4) if he still lived in the home at the end of the 30-year term, he would need to settle the agreement with Unison by either selling the property or paying a cash payment based on the appraised value to Unison, and (5) remodeling and maintenance adjustments would only apply in certain circumstances." ER—98:7-17 (original formatting).

Unison then asked the District Court to accept Unison's better facts over Elizarov's alleged facts, find Elizarov's allegations "factually false," and dismiss the Crossclaim on that basis. ER—76:19-23.

Since Elizarov never mentioned most of these documents in his Crossclaim, Unison could not argue that Elizarov must incorporated these documents into his Crossclaim by extensive references. See *Khoja, supra,* 899 F.3d at p. 1002 ("plaintiff [who] refers extensively to the document" incorporates the document by reference). Accordingly, to convince the District Court to rely on these documents without converging Unison's motion for dismissal into a motion for summary judgment, Unison—as the party with the burden of proof, *Kehr Packages, supra,* 926 F.2d at p. 1409—had to prove that these documents "form[ed] the basis of [Elizarov's] claim" and that Unison did not offer those just to "dispute facts stated in [Elizarov's] well-pleaded complaint" or to "insert [it] own version of the events into the [Crossclaim] to defeat otherwise cognizable claims," *Khoja, supra,* 899 F.3d at p. 1002-1003. But because Unison explicitly argued that the facts described in its documents _directly contradicted_ facts alleged in the Crossclaim, the only conclusion that the District Court should have made—and this court should make on this appeal—is that the Crossclaim incorporated _none_ of these additional documents by reference because

33

Unison offered these documents solely to substituted its version of the facts for the facts as alleged in the Crossclaim.

Finally, Elizarov also explicitly disputed all the additional documents except for the purchase agreement, ER—64—69 ("Alekseyeff declaration"), ER—70 ("Email to Pingel"), which created a "disputed issues" as to these documents. See *Coto Settlement, supra*, 593 F.3d at p. 1038 ("there are no disputed issues as to the document's relevance").

Therefore, this court should conclude that the Crossclaim incorporated by reference none of Unison's five additional documents and exclude those documents when the court reviewed Unison's motion for dismissal.

II.    **The allegation that Unison, who offered Elizarov $183,000 toward the downpayment on a house, concealed three significant contract terms from Elizarov until the day of closing when Elizarov could no longer reject Unison's contract without breaching his purchase agreement with the house seller, stated a claim for rescission based on fraud by concealment**

A party to a contract in California may seek to rescind the contract "[i]f the consent of the party rescinding ... was obtained through ... fraud[.]" Cal. Civ. Code, § 1689, subd. (b)(1). A fraud is committed by "[t]he

34

suppression of a fact, by one who is bound to disclose it, or who gives

information of other facts which are likely to mislead for want of

communication of that fact." Cal. Civ. Code, § 1710(3). Accordingly, a party

to a contract commits fraud when the party conceals information from the

other with the intent to deceive. *See* Cal Civ. Code, § 1572(3) ("[t]he

suppression of that which is true, by one having knowledge or belief of the

fact"); *Masters v. San Bernardino County Employees Retirement Assn., 32*

*Cal.App.4*[th] *30, 41 (Cal. Ct. App. 1995)* (section 1572 was intended to cover

"acts committed by one party to a contract with the intent to deceive

another party to the contract or to induce someone to enter into a

contract").

To state a claim for rescission based on fraud by concealment,

Elizarov had to allege that "(1) [Unison] must have concealed or suppressed

a material fact, (2) [Unison] must have been under a duty to disclose the

fact to the plaintiff, (3) [Unison] must have intentionally concealed or

suppressed the fact with the intent to defraud the plaintiff, (4) [Elizarov]

must have been unaware of the fact and would not have acted as he did if he

had known of the concealed or suppressed fact, and (5) as a result of the

concealment or suppression of the fact, [Elizarov] must have sustained

damage." See *Boschma v. Home Loan Center, Inc., 198 Cal.App.4th 230,*

248 (Cal. Ct. App. 2011.); see also CACI 1901 (stating elements and citing supporting authorities).

Despite Unison's contrary arguments, which the District Court did not consider, ER—7, but this Court still could, *Johnson, supra,* 534 F.3d at p. 1121, the Crossclaim has sufficiently alleged a claim for rescission based on fraud by concealment.

## A. Elizarov alleged fraud by concealment with sufficient specificity to satisfy Rule 9(b) consistent with the Circuit precedent

Unison incorrectly asserted that the claim for fraud by concealment was insufficient because Elizarov had not complied with the "heightened pleading requirement" under Fed. R. Civ. P. 9(b). ER—100:3—101:3.

Although a pleading generally states a claim in a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "[in]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," except that "[m]alice, intent, knowledge, and other conditions of a person's mind may [still] be alleged generally," Fed. R. Civ. P. 9(b). To comply with this requirement, the pleading must "state with particularity *the circumstances*

36

*constituting fraud or mistake*, including the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. United States v. Lungwitz,* 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation mark and alterations omitted; italics added).

"It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir. 2003). "While a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir. 1985) (original italics).

"Because concealment requires the allegation of fraud, the circumstances of the fraud are subject the heightened pleading standard established by Rule 9(b) and must be pleaded with particularity." *Great Pac. Sec. v. Barclays Cap., Inc.,* 743 F. App'x 780, 782 (9th Cir. 2018). At the same time, District Courts have acknowledged that allegations of fraud by omission cannot "specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk v. General Motors Corp.,* 496 F.Supp.2d 1088, 1098-99 (N.D. Cal.

2007). Under these circumstances, "[a] plaintiff cannot plead either the specific time of the omission or the place in a fraud by omission claim, as he is not alleging an act, but a failure to act." *Washington v. Baenziger*, 673 F.Supp. 1478, 1482 (N.D. Cal. 1987). See also *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co.,* 520 F. Supp. 3d 1258, 1267 (C.D. Cal. 2021) ("fraud-by-omission suit faces a slightly more relaxed burden, due to the fraud-by-omission plaintiff's inherent inability to specify the time, place, and specific content of an omission in quite as precise a manner"); *Falk v. Gen. Motors Corp.,* 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007); *MacDonald v. Ford Motor Co.,* 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014).

"In this circuit, a pleading [also] satisfies the particularity requirement 'if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.' " *Deutsch v. Flannery*, 823 F.2d 1361, 1365 (9th Cir. 1987), quoting *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir.1973). Furthermore, "[e]ven in cases where fraud is alleged, [this court] relax[es] pleading requirements where the relevant facts are known only to the defendant." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995), citing *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir. 1987).

38

Elizarov has sufficiently alleged fraud under these guiding principles.

Elizarov alleged that Unison's program was explained to him as follows: "Unison would lend Elizarov funds that Elizarov could use as part of a down payment to purchase a house in California in exchange for an option to acquire an ownership share in the purchased house; that Unison would have 30 years to exercise this option; that if Unison exercised the option before Elizarov sold the house, Unison would retain 40% of the equity gain in the house at the time of the sale, excluding any gains that resulted from any improvements that Elizarov might make to the house." ER—165:16-22. Elizarov also alleged that Unison <u>failed to disclose</u> that the program required Elizarov either to "buy out" Unison's interest in the house or to sell the house at the end of the 30-year term, required Elizarov to exclude any renovation-related increase in the value of the property during the first three years, and required Elizarov to submit to binding arbitration. ER—167:14-21.

These allegations sufficiently advised Unison that it would have to defend itself against a claim that Unison deliberately failed to disclose three important terms relating to the buyout clause, the improvement costs, and the arbitration when Unison described the program to Elizarov who then relied on those representations to move forward with the purchase. These

circumstances also sufficiently alleged "the who, what, when, where, and how of the misconduct charged," *Ebeid, supra,* 616 F.3d at p. 998, because it is apparent from the allegations that the person communicating with Elizarov about the program [ "who"] failed to disclose the concealed facts at any time *before* the final contract was presented to Elizarov on the day of closing ["when", "what", and "how"]. In fact, "Exhibit D" to Unison's motion for dismissal, the "Unison Homebuyer Conditional Approval Package," included an email from "Steven Chen," which gave Unison—who must have employed this individual—notice of at least one person who had the duty to make the necessary disclosure to Elizarov.[1] ER—141.

Therefore, the court should find that the Crossclaim has satisfied the particularity requirements under Rule 9(b) and reject Unison's contrary argument.

---

[1] Elizarov does not concede that this court may consider "Exhibit D" in deciding this case. Elizarov only referenced this document to demonstrate that the unalleged information that Unison complained about was readily available to Unison and did not need to be alleged in the Crossclaim.

**B.**    **Elizarov sufficiently alleged that he actually and reasonably relied on Unison's misleading and incomplete disclosures of its lending program, which omitted three significant terms of Unison's transaction with Elizarov**

Unison next incorrectly argued that Elizarov failed to allege the reliance on material facts because Unison disclosed the facts in the final agreement on July 31, 2019, or that the failure to disclose these terms affected Elizarov's decisions. ER—101:6—103:28.

To state a claim, Elizarov had to allege that Unison "must have concealed a material fact." *Boschma, supra,* 198 Cal.App.4th at p. 248. A fact is material if "a reasonable person would find it important in determining how he or she would act[.]" *Hoffman v. 162 North Wolfe LLC* 228 Cal.App.4th 1178, 1194 (Cal. Ct. App. 2014). So long as "a reasonable [person] would attach importance to [the fact's] existence or nonexistence in determining his choice of action in a transaction in question," the fact is material. *Charpentier v. Los Angeles Rams,* 75 Cal.App.4th 301, 312-313 (Cal. Ct. App. 1999) (internal citations omitted).

Whether a fact is material "is a jury question, and a 'court may [only] withdraw the case from the jury if the fact misrepresented is so obviously

unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *Id.* (internal citations omitted).

Finally, Elizarov had to allege that his "actual and justifiable reliance … caused him to take a detrimental course of action." *Beckwith v. Dahl,* 205 Cal.App.4th 1039, 1062 (Cal. Ct. App. 2012). To show the link between the fraud and the damages, Elizarov merely needed to allege that he "would have behaved differently" had the true extent of Unison's terms been disclosed *before* he was forced to choose between completing the purchase or losing his deposit and getting sued. *Mirkin v. Wasserman,* 5 Cal.4th 1082, 1093 (Cal. 1993).

In his Crossclaim, Elizarov alleged the following sequence of significant events:

1.    Unison described its program to Elizarov.

2.    Based on Unison's description, which did not include the three clauses relating to a forced sale, renovation costs, or mandatory arbitration, Elizarov decided to proceed to close the purchase using Unison's funds to cover a portion of his downpayment.

3.    Unison presented the final agreement to Elizarov, which included the previously undisclosed terms, on July 31, 2019, which was set as the closing date.

42

4.     Elizarov had no time to review and study Unison's novel contract because he was under pressure to get the documents to the escrow officer for same-day closing.

5.     But even if Elizarov had the time to read Unison's contract, Elizarov no longer had the option to reject the contract: with all the buyer's contingencies removed, Elizarov could no longer cancel the purchase without breaching his purchase contract and had to sign Unison's contract to complete the purchase with Unison's funds, whether he liked the terms or not.

<u>*Concealment*</u>

In arguing that "Mr. Elizarov simply cannot claim that the terms were hidden from him ***before*** he executed the Homebuyer Agreement," ER—101:13-14 (original formatting), Unison misunderstood Elizarov's allegations. Elizarov clearly explained that the fraud by concealment occurred when Unison failed to disclose all the important terms of its program—including the forced buy-back terms, the forfeiture of renovation-related increase in the value, and the forced arbitration—*before* Elizarov still had the choice to cancel the purchase contract without losing his deposit or getting sued for breach. However, by the time Unison finally disclosed those terms on the closing day, Elizarov could no longer choose to

43

walk away from the purchase without a financial penalty. To avoid breaching the purchase contract, Elizarov required $183,000 to close escrow and had to agree to Unison's terms because he had no other source of these funds except for Unison.

Unison's reference to Artur Elizarov's Real Estate License was also irrelevant to the District Court's analysis because "[t]he fact that a false statement may be obviously false to those who are *trained and experienced* does not change its character, nor take away its power to deceive others less experienced." *Boschma*, 198 Cal.App.4th at p. 249 (italics added). Under the law, Unison could mislead Elizarov about the terms of its novel financial product even if Elizarov was an expert in finance, especially when nothing in the Crossclaim suggests that Unison knew about Elizarov's real estate license when Elizarov agreed to work with Unison.

Unison's reference to Elizarov's license is also particularly puzzling because Elizarov did not act in the transaction as a Broker, nor does a broker license make Elizarov an expert on novel financial arrangements like Unison's. Under California law, a Real Estate Broker is necessary to negotiate *for others* the sale, purchase, leases, or mortgages. Cal. Bus. & Prof. Code, §§ 10130, 10131. "[A] person ... [never] acts as a broker and does

not require a license when he deals with his own property." *Stout v. Edmonds,* 180 Cal. App.3d 66, 70 (Cal. Ct. App. 1986).

Therefore, the court should conclude that Elizarov sufficiently alleged concealment.

<u>*Materiality*</u>

Unison's "lack of materiality" argument was incorrect because Unison confused the separate requirements for <u>*actual reliance*</u> and <u>*reasonable reliance*</u>.

In its motion, Unison argued that Unison's undisclosed terms of its arrangement with Elizarov were "immaterial" because Unison's decision to conceal the full terms of its arrangement Elizarov had never "affected Mr. Elizarov's decision or this transaction." ER—102:17-18. But under California law, the test for materiality is whether "*a reasonable [person] would attach importance to [the fact's] existence or nonexistence in determining his choice of action in a transaction in question,*" not whether the nondisclosure affected a particular victim's individual decisions, like Elizarov's, in the transaction. *Charpentier, supra, ,* 75 Cal.App.4[th] at pp. 312-313 (italics added).

Therefore, Elizarov did not have to allege that the concealed facts actually affected his decisions in any manner. Elizarov merely needed to

allege what facts Unison had concealed. And unless the court concludes that the concealed facts were "so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it," the ultimate decision on this issue must be left for the jury to decide. *See Charpentier, supra,* 75 Cal.App.4[th] at p. 312-313.

Because Elizarov alleged that Unison failed to disclose three important terms relating to the forced sale, limitation on renovation costs, and arbitration, which would be important to any reasonable person, the court should conclude that Elizarov has sufficiently alleged materiality.

<u>*Actual reliance*</u>

As for the "actual reliance" element, which Unison confused with the "materiality" requirement and did not separately discuss in its motion, the Crossclaim alleged Elizarov would not have agreed to do business with Unison or even purchase the house if Elizarov had known the full terms of his transaction with Unison. ER—169:8-10. Since this allegation explained how Elizarov "would have behaved differently" had Unison disclosed all the terms to him, this allegation satisfied the "actual reliance" element. *Mirkin, supra,* 5 Cal.4th 1082 at p. 1093.

*Intent*

Unison's final argument on this issue—that Elizarov alleged Unison's intent in "conclusory" terms—is also wrong. ER—104:25—105:13.

Although Rule 9(b), which applies to fraud claims, required Elizarov to allege "with particularity the circumstances constituting fraud or mistake," the same rule allowed Elizarov to allege the related issues of "[m]alice, *intent*, knowledge, and other conditions of a person's mind" in generally. Fed. R. Civ. P. 9(b) (italics added). Accordingly, Elizarov was not required to allege Unison's intent with specificity but could allege it a "short and plain statement" that applies to the allegations in general, Fed. R. Civ. P. 8(a)(2), without setting out "in detail the facts upon which he base[ed] his claim" against Unison on this element, *Knox, supra*, 196 F.2d at p. 117.

Accordingly, Elizarov's allegations that Unison acted "deliberately" in concealing the terms until the date of closing, ER—167 (¶¶ 20, 23), ER—168 (¶ 24) sufficiently satisfied his pleading obligations.

47

**C.   As a party to the contract, Unison had the duty to disclose to Elizarov all the material facts relating to the transaction**

Unison next incorrectly argued that it could not be liable for fraud by concealment because it lacked the duty to disclose. ER—102:1:22.

"In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise…[when] *the defendant makes representations but does not disclose facts which materially qualify the facts disclosed*, or which render his disclosure likely to mislead… ." *Warner Constr. Corp. v. L.A.*, 2 Cal.3d 285, 294 (Cal. 1970) (footnotes omitted; italics added). See also *Roddenberry v. Roddenberry*, 44 Cal.App.4th 634, 666 (Cal. Ct. App. 1996). In those circumstances, however, the act of concealment is actionable only in cases that involve some type of "relationship between the plaintiff and defendant in which a duty to disclose can arise." *Hoffman, supra,* 228 Cal.App.4th at p. 1187 (internal citations, sub-quotations, and punctuation omitted). Such "a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, *or parties entering into any kind of contractual agreement*." *Id*. (internal quotations and citations omitted; italics added). More on point, as the court explained

48

in *Masters, supra,* 32 Cal.App.4th at p. 41, Civil Code section 1572 explicitly applies to "acts committed by one party to a contract with intent to deceive another party to the contract or to induce someone to enter into a contract."

In this case, Elizarov alleged that Unison, as one party to the contract, induced Elizarov to enter into the final contract by concealing three material terms relating to the forced sale, limitation on the renovation costs, and arbitration until the closing date when Elizarov could no longer reject those terms without breaching his purchase contract. Accordingly, as explained in *Hoffman* and *Masters*, Unison had the duty to disclose <u>all the material facts</u> to Elizarov early enough in the transaction when Elizarov could still cancel the purchase contract penalty-free.

## D. Elizarov sufficiently alleged that Unison's fraudulent conduct caused him financial harm

Unison next incorrectly argued that Elizarov failed to explain <u>how</u> Unison's conduct caused him harm. ER—104:25—105:13.

To assert fraud, Elizarov had to allege that "the detrimental action taken by the plaintiff must have caused [plaintiff's] alleged damage." *Beckwith*, 205 Cal.App.4th at p. 1062. In his complaint, Elizarov sufficiently alleged that his deal with Unison cost him $303,000.00 in

unexpected losses—a 168% return on Unison's original investment of $183,000.00—which Elizarov had to pay to Unison to close the sale. ER—169 [¶ 33]. This allegation satisfied this pleading requirement as well.

In its arguments to the court, Unison also faulted Elizarov for his failure to "investigate" the terms of the final agreement, ER—105:16—106:10. This argument is wrong because "[i]t has been repeatedly held by the courts of our state [of California] that one to whom a representation is made has no duty to employ means of knowledge which are open to that party and which could, if pursued, reveal the falsity of that representation." *Linden Partners v. Wilshire Linden Associates*, 62 Cal.App.4th 508, 529 (Cal. Ct. App. 1998). See also *Civille v. Bullis*, 209 Cal.App.2d 134, 138 (Cal. Ct. App. 1962) ("the mere existence of an opportunity to investigate or of sources of information will not preclude the buyer from relying upon the representations").

Therefore, Unison may not escape liability for its wrongful conduct by blaming its victim, Elizarov, for Unison's deliberate decision to conceal important facts regarding its transaction with Elizarov until the date of closing when Elizarov could not reject Unison's terms without liability to his seller.

**III. THE ALLEGATION THAT UNISON PRESENTED ELIZAROV WITH A CONTRACT OF ADHESION, WHICH ELIZAROV COULD NOT REJECT**

**WITHOUT BREACHING AN EXISTING CONTRACT TO PURCHASE A HOUSE, AND WHICH REQUIRED ELIZAROV TO SELL THE HOUSE AFTER 30 YEARS OR OTHERWISE BUY UNISON OUT, TO ASSUME ALL RENOVATIONS COSTS INCURRED IN THE FIRST THREE YEARS, AND TO PAY INTEREST OVER 100% PER YEAR, STATED A CLAIM FOR RESCISSION AND RESTITUTION UNDER THE UNFAIR COMPETITION LAW AND CONSUMER LEGAL REMEDIES ACT**

In his second cause of action, Elizarov alleged that Unison's contract was "unconscionable"—and, therefore, illegal under California law—and sought restitution and rescission as equitable remedies. ER—169 (¶¶ 35, 36).

California Civil Code states: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5, subdivision (a).

The test under California law to determine whether a contract is "unconscionable" may be summarized as follows:

> Two alternative analyses exist under California law for determining whether a contractual provision will be unenforceable because it is unconscionable. The first model set out in *Graham v. Scissor–Tail, Inc.* asks initially whether the contract is one of adhesion. Since a

51

contract of adhesion is still fully enforceable, the inquiry then turns to whether enforcement should be denied. First, enforcement will be denied if the contract or provision falls outside the reasonable expectations of the weaker party. Second, enforcement will be denied even if it does fall within the reasonable expectations of the parties, but it is unduly oppressive or unconscionable.

The alternative analytical model was set out in *A & M Produce Co. v. FMC Corp*. It sought to define what rendered a contract or a contractual provision unconscionable and hence unenforceable under Civil Code section 1670.5. *A & M* concluded that unconscionability has a procedural and a substantive component. The procedural component focuses on the factors of oppression and surprise. Oppression results where there is no real negotiation of contract terms because of unequal bargaining power. " 'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." The substantive component of unconscionability looks to whether the contract allocates the risks of the bargain in an objectively unreasonable or unexpected manner. To be unenforceable there must be both substantive and procedural unconscionability, though there may be an inverse relation between the two elements.

A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to

the subscribing party only the opportunity to adhere to the contract or reject it."

*Patterson v. ITT Consumer Fin. Corp.,* 14 Cal.App.4th 1659, 1663-1664 (Cal. Ct. App. 1993) (internal citations omitted).

"[U]nconscionability has both a 'procedural' and a 'substantive' element." *A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 486 (Cal. Ct. App. 1982). "The procedural element requires oppression or surprise. Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form. The substantive element concerns whether a contractual provision reallocates risks in an objectively unreasonable or unexpected manner." *Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305, 1317 (Cal. Ct. App. 2005) (internal citations and quotations signs omitted).

Although "the starting point in any analysis of unconscionability is whether the contract is one of adhesion," in the end "[a]dhesion is not a prerequisite for unconscionability." *Harper v. Ultimo,* 113 Cal. App. 4th 1402, 1409 (Cal. Ct. App. 2003) (internal citations and quotations signs omitted).

Although "both the procedural and substantive elements must be met before a contract or term will be deemed unconscionable," both factors "need not be present to the same degree." *Harper, supra*, 113 Cal. App. 4th at p. 1409 (internal citations and quotations signs omitted). "A sliding scale is applied so that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (internal citations and quotation signs omitted).

In deciding the issue of unconscionability, the court looks "to the probabilities as to which party was more likely to benefit in determining whether clause was unconscionably one-sided." *Id.* at p. 1408 (internal citations omitted). Under this test, a contract of adhesion will not be enforced, "first, when the contract does not fall within the reasonable expectations of the weaker or 'adhering' party, and, even if it does, second—a principle of equity applicable to all contracts generally, when the contract is, considered in its context, unduly oppressive or 'unconscionable." *Allan v. Snow Summit, Inc.*, 51 Cal. App. 4th 1358, 1375 (Cal. Ct. App. 1996) (internal citations, sub-quotations, and ellipses omitted).

"Among the factors which strongly affect the assessment whether the contract was within the reasonable expectation of the 'adhering' party are

notice, and the extent to which the contract affects the public interest."

*Allan, supra*, 51 Cal. App. 4th at p. 1375-1376. "[T]he effect of an adequate notice, of course, is simply to alter preexisting expectations." *Id*. at p. 1376.

Finally, while a party is bound by a signed contract even if the party has not read the contract, "fraud, overreaching or excusable neglect" are the exceptions to this general rule. *Hulsey v. Elsinore Parachute Ctr*., 168 Cal. App. 3d 333, 339 (Cal. Ct. App. 1985) (internal citations omitted).

### A.     Elizarov properly sought equitable relief under the California Unfair Competition Law

California Unfair Competition Law States:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments…as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. Code § 17203. This law, which applies to corporations, Cal. Bus. & Prof. Code § 17201, defines "unfair competition" as "any *unlawful,* unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200 (italics added), and covers both a pattern of conduct and a "single act

of misconduct," *Klein v. Earth Elements, Inc.*, 59 Cal.App.4th 965, 969 fn. 3 (Cal. Ct. App. 1997).

Since the act uses disjunctive language, Elizarov was not required to allege that Unison engaged in an unlawful, unfair *and* fraudulent act but could instead allege that Unison engaged in "unfair competition" under *any* of these three circumstances. *AMN Healthcare, Inc. v. AYA Healthcare Servs., Inc.*, 28 Cal.App.5th 923, 950 (Cal. Ct. App. 2018).

In his Crossclaim, Elizarov alleged that Unison engaged in "unlawful" conduct—the violation of Civil Code section 1670.5, subdivision(a) cited earlier, ER—169 (¶ 35)—a claim which this court previously summarized as follows:

> The California Supreme Court has held that section 17200 "defines 'unfair competition' very broadly, to include 'anything that can properly be called a business practice and that at the same time is forbidden by law.'" "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." It does not matter whether the underlying statute also provides for a private cause of action; section 17200 can form the basis for a private cause of action even if the predicate statute does not.

*Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (internal citations omitted). Broadly defined, this law applies to any conduct except when "another provision must actually 'bar' the action or clearly permit the conduct." *Id.* (internal citations omitted).

Injunctive relief and restitution, which Elizarov seeks in this case, are the available remedies under the Unfair Competition Law. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 179 (Cal. 1999).

## B.   Elizarov may also seek equitable relief under the California Consumer Legal Remedies Act

The Consumer Legal Remedies Act, the CLRA, which applies to any "transaction intended to result or that results in the sale or lease of goods or services to any consumer," prohibits "[i]nserting an unconscionable provision in the contract" as an "unfair method[] of competition and unfair or deceptive act[] or practice[]." Cal. Civ. Code, § 1770, subd. (a)(19). Like the Unfair Competition Act, this law allows "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 [to] bring

57

an action against that person to recover or obtain … [r]estitution of property." Cal. Civ. Code, § 1780, subd. (a)(3).

### C. Elizarov has sufficiently alleged that Unison's contract was both substantively and procedurally unconscionable

In its motion for dismissal, Unison incorrectly asserted that its contract with Elizarov was neither procedurally nor substantively unconscionable.

Unison's was the worst type of adhesion contract. While the "subscribing party" to a typical adhesion is afforded "only the opportunity to *adhere to the contract or reject it*," *Patterson, supra,* 14 Cal.App.4th 1659, 1663-1664 (internal citations omitted; italics added), Elizarov never even had a meaningful opportunity to reject Unison's contract if Elizarov disliked its terms.

Unison presented its full contract to Elizarov for the first time on the day of closing. To close the transaction, Elizarov had to have the entire deposit—including Unison's $183,000 portion—delivered to the escrow officer by the end of the day. If Elizarov rejected Unison's contract, Unison would have refused to provide $183,000 toward Elizarov's downpayment. Without these funds, which Elizarov could not possibly have secured from

another source by the end of the day, Elizarov would have insufficient funds to close the transaction. And with all the purchase contingencies removed, Elizarov no longer had the right to cancel the purchase without losing his earnest money deposit of $27,450 and becoming liable to the seller for breach. ER—168 (¶ 25).

Accordingly, by concealing all the material terms from Elizarov until the day of closing, Unison effectively *compelled* Elizarov to accept the contract and denied him even the hypothetical option to reject the contract that exists in typical contracts of adhesion.

Although the court is within its discretion to invalidate Unison's contract, no matter how "fair," solely because Unison legally *forced* the contract on Elizarov, further examination reveals that the contract also included several one-sided terms that benefitted only Unison.

First, Unison's was not a typical "option contract." In California, "[a]n option has been defined as being 'a contract by which the owner of property invests another with the exclusive right to purchase said property at a stipulated sum within a limited or reasonable time in the future." *Dollinger v. San Gabriel Lanes,* 205 Cal.App.2d 705, 708 (Cal. Ct. App. 1962). But Unison's agreement did not address Unison's right to purchase the property. Unison never cared to buy or own Elizarov's house. The

59

agreement instead compelled Elizarov, after 30 years, either to sell the property or repay Unison its $183,000 investment _plus_ its portion of the increase in the value. ER—177 (Section 6.2.1; Section 7). This coercive, one-sided clause made the contract substantively unconscionable.

Second, the agreement shifted the entire cost of any improvements made during the first three years to Elizarov. While the contract ordinarily allowed Elizarov to adjust the amount used in calculating Unison's share by subtracting the remodeling adjustments, ER—210 (defining "Ending Agreed Value"), the contract _precluded_ such adjustments if Elizarov sold the property during the first three years, ER—210. This second one-sided clause added to the contract's substantive unconscionability.

And three, this contract allowed Unison to recover an extreme interest rate of over 100% per year. See e.g. _Carboni v. Arrospide_, 2 Cal.App.4th 76, 82 (Cal. Ct. App. 1991) (Applying unconscionability to high interest-bearing loan because "the interest rate is the 'price' of the money lent; at some point the price becomes so extreme that it is unconscionable.")

Finally, Unison's decision to conceal _these very terms_ from Elizarov until the day of the closing suggests that Unison _knew_ that these terms were unconscionable and sought to conceal them from consumers until the

date of closing when Unison could force consumers to accept its terms or risk a claim for the breach of the purchase contract by the seller.

Accordingly, Elizarov sufficiently alleged that his contract with Unison was both procedurally and substantively unconscionable—and, therefore, "unlawful" under Civil Code section 1670.5—to justify rescission and restitution under the Unfair Competition Law and the Consumer Legal Remedies Act.

## CONCLUSION

The District Court dismissed Elizarov's Crossclaim because of an error.

When Unison asked the District Court to dismiss the Crossclaim as factually false based on five additional documents and testimony of two witnesses presented with Unison's motion for dismissal, Rule 12(d) required the District Court either to exclude the evidence and consider the motion based solely on the facts alleged in the Crossclaim or treat Unison's motion for dismissal as a motion for summary judgment. Although the law allowed the District Court to consider additional documents incorporated by reference into the pleading as an exception to Rule 12(d), the exception did not apply to Unison's documents because Unison presented those

documents solely to contradict the well-pleaded allegations of fact in the Crossclaim and to substitute its version of the facts for Elizarov's.

Therefore, the court had to exclude Unison's evidence and consider the challenge to the Crossclaim without it.

Although the District Court never considered the merits of Unison's objections to the Crossclaim, this court may do so for the first time on appeal because the Circuit precedent allows this court to affirm the dismissal on any basis supported by the record. However, upon considering the Crossclaim without Unison's additional evidence, the court should readily conclude that the Crossclaim stated a claim for rescission based on fraud by concealment, which Elizarov alleged with the sufficient level of particularity, and for restitution under the Unfair Competition Law and the Consumer Legal Remedies Act, which allows equitable remedies for challenges to unconscionable contracts.

Therefore, the courts should REVERSE the District Court's order granting Unison's motion for dismissal and REMAND the case to the District Court for discovery and trial.

#    #    #

Date: 6/3/24

LOIA, Inc. (APLC)

_Ilya Alekseyeff_

Ilya Alekseyeff

*Attorney for Appellant Artur Elizarov*

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

I am the attorney for the Appellant.

**This brief contains <u>12,004</u> words**, excluding the items exempted by Fed. R. App. P. 32(f).

The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

**Signature** _Ilya Alekseyeff_____ **Date** _06/03/2024_____

64